# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-4004

_____

|  |  |  |
|---|---|---|
| Robert Hechter Silverman, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Julie Hechter Silverman, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 13, 2001

Filed: October 4, 2001

_____

Before MURPHY, HEANEY and BEAM, Circuit Judges.

_____

HEANEY, Circuit Judge.

This case involves the application of the Younger[1] abstention doctrine to a petition under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670 (Hague Convention). For the reasons discussed below, we remand the matter to the district court for further proceedings.

_____

[1]Younger v. Harris, 401 U.S. 37 (1971).

## I. BACKGROUND

Robert Hechter Silverman and Julie Hechter Silverman were married in 1989, and they have two children, ages 6 and 9. In 1995, the Silvermans moved from Poughkeepsie, New York to Plymouth, Minnesota, where they lived until August 1999, when they moved to Israel. In October of that year, the Silvermans filed a voluntary petition in the United States Bankruptcy Court in which they declared under penalty of perjury that they were residing in Plymouth.

In June 2000, Julie[2] left Israel with the children. She had obtained round-trip tickets with a scheduled return to Israel in August 2000, and had secured Robert's written permission to take the children across international borders while "on vacation." Before she and the children were scheduled to return to Israel, however, Julie filed a petition in Minnesota state court seeking a legal separation from Robert and custody of the children. Robert was personally served in Israel.

Pursuant to the Hague Convention, Robert filed a "Request for Return of Abducted Children" with the National Center for Missing and Exploited Children (NCMEC)[3] on August 24, 2000. On October 5, 2000, Robert filed a Hague petition seeking the return of the children in federal district court, and an evidentiary hearing was scheduled for November 8, 2000. He also filed a motion with the Minnesota court on October 10, 2000, seeking either dismissal of the custody proceedings for lack of subject matter jurisdiction in light of the Hague Convention, or a stay of the custody proceedings pending resolution of his NCMEC request. He did not file a Hague Convention petition with the state court.

---

[2]For the sake of convenience, we refer to the parties by their first names.

[3]Under State Department regulations, the National Center for Missing and Exploited Children is responsible for processing applications seeking the return of children wrongfully removed to or retained in the United States. 22 C.F.R. § 94.6.

At the hearing before a state-court referee on October 10, Robert's attorney argued the jurisdictional issue, and the referee engaged her in a discussion of the facts surrounding the parties' move to Israel, the bankruptcy, and the status of the children in Minnesota at the time. Counsel repeatedly asserted that the court should not reach the merits of the custody issue, noting that the children's physical presence in Minnesota was the result of an allegedly wrongful removal from Israel. Julie's attorney, however, argued that the only prerequisite to the court ruling on the merits of the custody issue was a finding that Minnesota was the children's "home state" under Minn. Stat. § 518D.102(h) (Minnesota's version of the Uniform Child Custody Jurisdiction Act (UCCJA)), and that the best interests of the children required granting custody to Julie.

On October 17, 2000, the referee issued an order (1) granting Julie temporary sole legal custody and temporary sole physical custody of the children, (2) granting Robert the right to reasonable supervised visitation, and (3) appointing a guardian ad litem for the children. In factual findings, the referee noted that Robert had filed a Hague petition with the federal district court, but that at the time of the October 10 hearing, Julie had not been served,[4] and neither party had requested that the record remain open, a fact which we deem irrelevant to a decision in this matter. The remainder of the findings, however, did not address Hague Convention issues. The referee concluded that the Silvermans' move to Israel "was a temporary absence and not meant to be permanent" (App. at 108) and that Minnesota was the children's "home state" under the UCCJA. The referee noted the inconsistency of Robert's position with respect to the child custody issue and his representation to the bankruptcy court, and Julie's allegation that Robert had committed "numerous instances of domestic abuse" (App. at 107).

---

[4]Julie was served the day of the hearing in the afternoon. (App. at 14).

Julie filed her answer to Robert's Hague petition at the end of October, asserting that the federal district court lacked jurisdiction over the petition because "the United States is not [sic] the habitual residence of the children . . . , there has been no wrongful removal or retention and therefore the Hague Convention is not applicable" (App. at 57), and raising a number of affirmative defenses. Julie also filed a motion to dismiss Robert's Hague petition arguing, inter alia, that the federal court should abstain from exercising jurisdiction because (1) there were ongoing state proceedings, (2) the state had a significant interest in matters of child custody, and (3) Robert had the opportunity to present the Hague issue in state court.

Meanwhile, on September 22, a NCMEC agent had contacted Robert's Israeli attorney and requested that the attorney obtain from the Israeli courts a determination pursuant to Chapter III, Article 15 of the Hague Convention[5] as to whether Julie had wrongfully removed or retained the children within the meaning of the Convention. Robert's Israeli attorney served Julie on November 7, 2000 with a copy of the petition and supporting documents. The district court was also advised of the Israeli petition.

On November 7, 2000, the federal district court held a hearing on Julie's motion to dismiss Robert's Hague petition seeking to have the children returned. Julie's

---

[5]Article 15 provides:

> The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of a child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful with the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

T.I.A.S. No. 11670.

attorney contended that <u>Younger</u> abstention was appropriate because the matter before the state court implicated the state's significant interest in child custody matters, and because Robert had litigated the Hague Convention issues before the state court and had sought review of the state court ruling in the Minnesota Court of Appeals.[6] Robert's attorney responded that the state court had declined to rule on his Hague Convention argument, and emphasized the differences between a Hague Convention proceeding and a merits custody determination. Robert's attorney also contended that it is the "left-behind parent" who is entitled to select the forum in which to raise Hague Convention issues.

The district court granted Julie's motion and dismissed Robert's Hague petition, concluding <u>Younger</u> abstention was appropriate because Robert had "failed to show that the state courts will not afford him adequate opportunity to litigate his Petition under the Hague Convention." <u>Silverman v. Silverman</u>, No. 00-2274, slip op. at 6 (D. Minn. Nov. 13, 2000). The court noted that the federal statute implementing the treaty vested concurrent jurisdiction over Hague petitions in both state and federal courts and that Robert "availed himself of state court to the extent that he challenged subject matter jurisdiction and argued that Israel is the 'habitual residence' of the children." <u>Id.</u> Robert appeals.

## II. DISCUSSION

The Hague Convention attempts to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, Preamble, T.I.A.S. No. 11670. The primary purpose of the Convention is "to restore the <u>status quo ante</u> and to deter

---

[6]Robert filed a petition for Writ of Mandamus on October 27, 2000. There has been subsequent state court action in the matter.

parents from crossing international boundaries in search of a more sympathetic court." Rydder v. Rydder, 49 F.3d 369, 372 (8th Cir. 1995) (citation omitted).

Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them," Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), the Supreme Court has formulated a number of abstention doctrines based upon the federal courts' prerogative to withhold equitable or quasi-equitable forms of relief. Younger abstention prohibits a federal court from interfering in pending state civil cases where (1) there is an ongoing state proceeding (2) that implicates important state interests and (3) there is an adequate opportunity in the state proceeding to raise the federal issues. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). We review the district court's application of Younger abstention for abuse of discretion. Night Clubs, Inc. v. City of Fort Smith, Ark., 163 F.3d 475, 479 (8th Cir. 1998).

Robert's arguments for reversal mostly implicate the third consideration. In particular, he complains that the district court's ruling denied him his right to select the forum in which to proceed with his petition, thereby permitting Julie to engage in precisely the sort of forum selection the Hague Convention aims to curtail. He also points out that the Hague issues were raised in the state court only by way of support for his argument that the state court should not have ruled on the custody issue until the federal court resolved the Hague issues.

Whatever the validity of these arguments, it is apparent that there is a fundamental defect in the federal district court's decision to dismiss Robert's Hague petition on abstention grounds. In Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 707 (1996), the Supreme Court made clear that "federal courts have the power to dismiss or remand based on abstention principles only where the relief sought is equitable or otherwise discretionary." That is not the sort of remedy sought here. The Hague

Convention mandates that a court that receives a valid Hague petition must determine whether the child has, in fact, been wrongfully removed:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

Article 12 (emphasis added.)  In the absence of discretion with respect to relief, abstention principles do not permit an outright dismissal of a Hague petition.  See Yamaha Motor Corp., U.S.A. v. Stroud, 179 F.3d 598, 603-04 (8th Cir. 1999).

Because the Hague issue has not been addressed, we believe the appropriate course of action is to remand the matter to the district court to consider whether the Silverman children were wrongfully removed.  We note that nearly a year has passed since Robert filed his petition under the Hague Convention, due in no small part to our own consideration of the case.  This matter warrants prompt resolution.

## III.  CONCLUSION

The matter is remanded to the district court for further proceedings not inconsistent with this opinion.  The mandate shall issue forthwith.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.