**In re the Application of:**

**Ishak CERIT, Plaintiff,**

v.

**Hayley Ka'iulani CERIT, Defendant.**

**No. CIV. 01–00826 BMK.**

United States District Court,
D. Hawai'i.

Feb. 8, 2002.

Geoffrey Hamilton, Char Hamilton Campbell & Thom, Honolulu, HI, Chunmay Chang, Honolulu, HI, for plaintiff.

Dennis E.W. O'Connor, Reinwald O'Connor Marrack Hoskins & Playdon, Honolulu, HI, for defendant.

*ORDER GRANTING RESPONDENT HAYLEY KA'IULANI CERIT'S MOTION TO DISMISS PETITION FOR THE RETURN OF CHILD TO PETITIONER PURSUANT TO 42 U.S.C. 11601 ET SEQ. (THE INTERNATIONAL CHILD ABDUCTION REMEDIES ACT) FILED DECEMBER 13, 2001*

KURREN, United States Magistrate Judge.

On December 13, 2001, Petitioner Ishak Cerit ("Petitioner") brought before this Court a Petition for the Return of Child to Petitioner Pursuant to 42 U.S.C. § 11601 et seq., (The International Child Abduction Remedies Act) ("Petition"). On January 25, 2002, Respondent Hayley Ka'iulani Cerit's ("Respondent") moved to dismiss the Petition based in part on grounds of abstention.[1] The matter came on for hearing on February 4, 2002. Appearing on behalf of Respondent were Dennis E.W.

---

**1.** Respondent filed a Motion to Dismiss Petition for the Return of Child to Petitioner Pursuant to 42 U.S.C. 11601 et seq. (the International Child Abduction Remedies Act) Filed December 13, 2001 (hereinafter "Motion to Dismiss").

O'Connor and Jeffrey K. Hester. Appearing on behalf of Petitioner were Geoffrey Hamilton and Chunmay Chang. After careful consideration of the motion, supporting and opposing memoranda, and arguments of counsel, the Court finds abstention proper under both the *Younger* and *Colorado River* abstention doctrines. Accordingly, Respondent's Motion to Dismiss is hereby GRANTED.

## BACKGROUND

Petitioner and Respondent were married on December 21, 1985. In 1990, son Sadik Emir Cerit ("Sadik") was born in Honolulu, and in 1999, daughter Aloha Cerit ("Aloha") was born in Turkey. The family lives in Istanbul, Turkey for most of the year, but vacations annually in Honolulu, Hawaii where they also own a home. On June 14, 2001, Petitioner, Respondent, and their two children arrived in Honolulu from Turkey for their annual two-and-a-half month stay. Shortly after their arrival, Petitioner returned to Turkey on business, but planned on rejoining his family in Honolulu prior to the end of their stay.

On August 21, 2001, Respondent filed an Ex Parte Petition For a Temporary Restraining Order for Protection and Statement ("TRO Petition") against Petitioner in the Family Court of the First Circuit, State of Hawaii ("Family Court"). In the TRO Petition, Respondent alleged spousal abuse and sought protection and custody of Sadik and Aloha. The Family Court granted the TRO Petition the same day and set it for hearing on October 3, 2001.[2] That same day, August 21, 2001, Petitioner returned to Honolulu from Turkey and was served immediately with Respondent's TRO Petition.

On August 30, 2001, Respondent filed a Complaint for Divorce from Petitioner in the Family Court, captioned *Hayley Cerit v. Ishak Cerit,* Civil No. FC–D 01–1–2951 ("divorce action").

On September 11, 2001, Respondent filed for Pre–Decree Relief seeking family support and temporary custody of the children. The following day, Petitioner returned to Turkey where he initiated his own divorce proceeding and obtained an order of temporary custody of the children.

On September 26, 2001, Petitioner filed a Motion to Dismiss the Family Court divorce action ("Motion to Dismiss Divorce").

On October 3, 2001, in the continued TRO Petition hearing, Judge Karen M. Radius issued a TRO for a period of one year and ordered Respondent to have temporary custody of Sadik and Aloha until amended by the divorce judge.

On October 5, 2001, in the divorce action, Petitioner lodged a Motion to Dismiss And/Or For Relief Concerning Temporary Child Custody, Child Support, and Spousal Support ("Motion to Dismiss and/or For Custody"), in which Petitioner argued, *inter alia,* that the state court lacked jurisdiction to hear the custody and divorce action. On October 9, 2001, Petitioner filed a Supplemental Memorandum Re: Motion to Dismiss or For Relief Concerning Child Custody, Child Support and Spousal Support ("Supplemental Memorandum"), in which he argued for the immediate return of his children to Turkey pursuant to the Hague Convention on the Civil Aspect of International Child Abduction. On October 10, 2001, Petitioner's Motion to Dismiss Divorce and Motion to Dismiss and/or For Custody came on for hearing before Judge Bode Uale in Family

---

**2.** The TRO Petition came on for hearing on September 5, 2001, but was continued to October 3, 2001.

Court ("October 10 proceeding"). The same day, Judge Uale denied Petitioner's Motion to Dismiss Divorce and on October 15, 2001 denied Petitioner's Motion to Dismiss and/or For Custody.

Several hearings followed in the Family Court. On November 7, 2001, Judge Uale issued an Order Re: Visitation, which temporarily restrained and enjoined Petitioner from removing Sadik and Aloha from Honolulu, and ordered that Petitioner have only supervised visitation with the children unless the divorce action in Turkey is dismissed, or upon payment of a bond in the amount of $10,000. The following day, Petitioner moved for reconsideration of the Order Re: Visitation and posted a $10,000 bond. The Court denied the motion for reconsideration on November 30, 2001.

On December 13, 2001, Petitioner filed the instant Petition in this Court, seeking the return of Sadik and Aloha to Petitioner in Turkey pursuant to the Hague Convention on the Civil Aspect of International Child Abduction. On January 25, 2002, Respondent filed a Motion to Dismiss the Petition, arguing that this Court is obligated to abstain from hearing the Petition under the *Colorado River* abstention doctrine. Petitioner opposed the motion on January 30, 2002, to which Respondent replied the following day.

## DISCUSSION

### I. *Hague Convention and ICARA*

The Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") is a multilateral international treaty on parental kidnaping to which the United States and Turkey are signatories. The goal of the Convention is to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." *See* Hague Convention, Oct. 25, 1980, pream-

ble, T.I.A.S. no. 11670, 19 I.L.M. 1501, 1501. The Hague Convention applies where a child has been removed or retained away from his or her habitual residence in breach of the custody rights that the petitioner (parent) was exercising at the time of the wrongful removal or wrongful retention. Hague Convention, art. 3. The objects of the Convention are: (1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and (2) "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Hague Convention, art. 1.

■ The United States has implemented the Hague Convention by enactment of the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 et seq. ICARA vests state and district courts with concurrent jurisdiction over claims arising under the Convention and empowers those courts to order the return of wrongfully removed or retained children. *See* 42 U.S.C. § 11603. An ICARA hearing is not a custody hearing. *See Blondin v. Dubois*, 189 F.3d 240, 245 (2nd Cir.1999) (under ICARA, a district court has "the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim"); Hague Convention, art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue."). An ICARA proceeding merely determines which nation should hear the underlying custody claim. *See Blondin*, 189 F.3d at 245.

■ An ICARA petitioner bears the burden of proving by a preponderance of the evidence that the child in question has been wrongfully removed from or retained outside the nation of his or her "habitual residence." *Id.; see* 42 U.S.C.

§ 11603(e)(1)(A); Hague Convention, arts. 3 and 4.

■ If the petitioner establishes that the removal or retention was wrongful, the child must be returned unless the respondent can establish one or more of four defenses: 1) the ICARA proceedings were not commenced within one year of the child's abduction; 2) the petitioner was not actually exercising custody rights at the time of the removal or retention; 3) there is a grave risk that return would expose the child to "physical or psychological harm or otherwise place the child in an intolerable situation"; or 4) return of the child "would not be permitted by the fundamental principles ... relating to the protection of human rights and fundamental freedoms." *Blondin*, 189 F.3d at 245; Hague Convention, arts. 12, 13 and 20. The first two defenses can be established by a preponderance of the evidence; the last two must be established by clear and convincing evidence. *Blondin*, 189 F.3d at 245–46; 42 U.S.C. § 11603(e)(2).

## II. *Abstention*

■ The issues central to Petitioner's Petition for the return of his children are (1) determination of the children's "habitual residence" and (2) whether or not the children would be subject to physical or psychological harm.[3] In her Motion to Dismiss the Petition, Respondent requests that the Court abstain from considering the Petition as Petitioner has already sought relief in state court on these very issues. Petitioner counters that the Hague Convention was merely "mentioned briefly" in a supplemental memorandum to Petitioner's Motion to Dismiss the divorce action and that "[n]o actual Petition for immediate return of the children under the Hague Convention was submitted by the

Petitioner in the state divorce action." (Opposition at 13.) The evidence submitted, however, indicates otherwise.

Petitioner's memorandum in question, the "Supplemental Memorandum Re: Motion to Dismiss [Complaint for Divorce] or For Relief Concerning Child Custody, Child Support and Spousal Support," addressed at length the Hague Convention and its relevant articles, stating that Petitioner "is entitled to this Court's assistance pursuant to the Hague Convention" in obtaining the prompt return of Sadik and Aloha. (Exh. J at 1, 3, attached to Motion to Dismiss.) In addition, the transcript of the October 10 proceeding reveals a clear intent by Petitioner to bring an ICARA petition in state court:

> MR. KAWATA:[4] ... Article 29, I believe, also says that aside from doing an application before the Central Authority of the federal courts, *we can go directly to the judicial authorities of this state.* It's—very clear Article 29 says that, Your Honor. *And that's precisely what we've been done here,* your Honor.
>
> . . .
>
> MR. KAWATA: So Mr. Cerit's position, Your Honor, is this. I mean, the Hague Convention which governs this situation says first you determine where is the child habitually a resident of. If he's habitually a resident of the foreign state Turkey, then *upon application to the court, and that's what he's done in this case,* the court is obligated under Articles 3 and 8 to return the child to where he's supposed to be. And that is Turkey, Your Honor.

(Transcript at 27:19–25, 28:8–15, attached as Exh. 1 to Opposition (emphasis added).) Based upon these assertions by Petition-

---

3. Certainly other issues must be determined, but these two are at the center of the parties' dispute.

4. Mr. Kawata was Petitioner's attorney at the October 10 proceeding.

er's counsel, and those in his Supplemental Memorandum, this Court finds that Petitioner has selected the state court as the forum for bringing his ICARA petition.[5]

The question thus becomes whether this Court should abstain from hearing the instant petition. Respondent argues that under both the *Younger* and *Colorado River* abstention doctrines, the Court must abstain.[6] The Court agrees.

Before addressing the *Younger* and *Colorado River* requirements, the Court will address several points raised by Petitioner in arguing against abstention.[7] Petitioner argues that *Mozes, Silverman,* and *Lops* all dictate that this Court cannot abstain from hearing the instant Petition. Each of these cases, however, is distinguishable from the case at bar, and therefore uninstructive for this Court.

Petitioner argues that *Silverman v. Silverman,* 267 F.3d 788 (8th Cir.2001), in which the Court of Appeals of the Eighth Circuit found that the district court's dismissal of an ICARA petition under the *Younger* doctrine was improper, is similar to the instant case and mandates that a federal court *must* decide an ICARA petition. *See Silverman,* 267 F.3d at 791 (stating that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them"). The facts of *Silverman,* however, are sufficiently different from the facts in the case at bar that this Court cannot draw any parallel conclusions. In *Silverman,* the mother and father lived in Israel with their two children. The mother left Israel with the two chil-

dren for "vacation" in the United States, where she filed a petition in the Minnesota state court for a legal separation from the father and custody of the children. The father-petitioner then filed an ICARA petition in federal court. Five days later, he filed a motion in state court to dismiss the custody proceedings "for lack of subject matter jurisdiction in light of the Hague Convention." In the federal court action on the ICARA petition, the mother moved the court to abstain, claiming that the issues had already been litigated in state court. The district court granted the mother's motion. On appeal, the Eighth Circuit stated that "[t]he Hague Convention mandates that a court that receives a valid Hague petition must determine whether the child has, in fact, been wrongfully removed." Despite this Language, however, a critical distinction in *Silverman* was the fact that the father had filed his ICARA petition in federal court *prior* to raising any mention of the Hague Convention in state court. Moreover, the Eighth Circuit Court noted that the state court, in its findings of fact, only noted that the father had filed an ICARA petition in federal district court, but otherwise did not address any Hague Convention issues. The Eighth Circuit remanded the case. Here, in contrast, it is clear that Petitioner sought the return of his children under the Hague Convention and made an application to the state court for such relief. The state court extensively addressed issues under the Hague Convention. Only later—three months later—did Petitioner

---

**5.** The Court notes that Petitioner could have moved to dismiss the divorce complaint in state court, and filed an ICARA petition in federal court; instead, he deliberately chose the state court as his forum.

**6.** Although unclear, it appears that Respondent argues for abstention under *Colorado River* in her papers and under *Younger* at the hearing. Nevertheless, the Court finds abstention appropriate under both doctrines, and will therefore perform both analyses as alternative bases for abstention.

**7.** Petitioner only asserts that this Court cannot abstain as a matter of law from hearing the ICARA petition. He does not refute, either in his papers or at the hearing, whether the individual requirements of each abstention doctrine have been met.

file an ICARA petition in the federal district court. Thus, Petitioner's arguments in light of *Silverman* are unpersuasive.

Petitioner argues that under *Mozes v. Mozes*, 239 F.3d 1067 (9th Cir.2001), a state court "applying [Article 3 of the Hague Convention] must [ ] answer a series of four questions":

> (1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?

*Mozes*, 239 F.3d at 1070.[8] Because the Family Court did not explicitly answer those four questions, Petitioner argues that the October 10 proceeding was inconclusive, and Petitioner is therefore not precluded from filing the instant Petition in this Court. Petitioner appears to misread *Mozes*. The Court of Appeals in *Mozes* found the language of Article 3 to require a determination of four facts. The Court did not, however, make any statements about the validity or adequacy of a proceeding should a court fail to determine the answer to those four questions. Thus, the failure of the state court to answer these four questions does not necessarily render the state proceeding invalid or "inadequate." Regardless, it appears from the record that the court is in the process

of answering these questions. *See infra* II(A)(1). Moreover, even if the October 10 proceeding were inadequate, the fact remains that Petitioner filed an ICARA petition in state court and the issues central to such a petition were lengthy addressed by the court. If Petitioner found any ruling "inadequate," Petitioner should have availed himself of his various remedies, including, for example, filing a motion for clarification, a motion for reconsideration, or an appeal.[9] Petitioner cannot now expect the federal court to entertain a petition raised in state court simply because he feels the state court's ruling was "inadequate."

Petitioner also cites *Lops v. Lops*, 140 F.3d 927 (11th Cir.1998), in support of his contention that the district court *must* exercise its jurisdiction and hear the instant Petition:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule ... when a parallel state court action exists, the Supreme Court has emphasized that [t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.

*Lops*, 140 F.3d at 942 (internal citations and quotation marks omitted). Nevertheless, despite the fact that abstention is the exception and not the rule, if the require-

---

**8.** Article 3 states in relevant part,
> The removal or the retention of a child is to be considered wrongful where—
> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> b) at the time of removal or retention those rights were actually exercised, either jointly

or alone, or would have been so exercised but for the removal or retention.

**9.** Petitioner insists that the relief he sought under the Hague Convention was solely to dismiss the divorce complaint. The Court notes once again that the Petitioner clearly made an alternative request to the Family Court for the return of his children pursuant to the Hague Convention.

ments of the *Younger* or *Colorado River* doctrines are met, the Court must abstain from hearing the ICARA petition, as have numerous other courts. *See, e.g., Bouvagnet v. Bouvagnet,* 2001 WL 1263497 (N.D.Ill. Oct.22, 2001) (granting motion to dismiss action as a result of finding abstention appropriate under *Younger* ); *Grieve v. Tamerin,* 2000 WL 1240199 (E.D.N.Y. Aug.25, 2000), *aff'd,* 269 F.3d 149 (2nd Cir.2001) (affirming district court's decision to abstain under *Younger* ); *Morisada Corp. and ABC Corp. v. Beidas,* 939 F.Supp. 732 (D.Haw.1995) (staying action pursuant to *Colorado River* ).

## A. *Younger doctrine*

 The *Younger* abstention doctrine prohibits a federal court from interfering in pending state civil cases where (1) there is an ongoing state proceeding (2) that implicates important state interests and (3) there is an adequate opportunity in the state proceeding to raise the federal issues. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). When all of the *Younger* requirements are present, the federal court must abstain, absent "a showing of bad faith, harassment or other extraordinary circumstances." *Bouvagnet,* 2001 WL 1263497, at *2 (N.D.Ill. Oct.22, 2001) (quoting *Philip Morris, Inc. v. Blumenthal,* 123 F.3d 103, 105 (2nd Cir.1997)).

### 1. *There is an ongoing state proceeding*

 The first requirement for abstention under *Younger* is that there be an ongoing state proceeding that is judicial in nature. At the October 10 proceeding, the court stated,

Okay. So I think the Hague applies, but so does Article 13 until I know more about what's happening with this boy.

. . .

Because Article 13,B says that I don't have to return the boy if there's a grave risk that his or her—would expose him to physical or psychological harm. . . .

. . .

. . . I don't know right now, I don't have enough information. But I know one thing, I'm not going to dismiss the divorce case. . . .

. . .

. . . You know, I don't know where the habitual residence. I know the boy ordinarily stays in Turkey. I don't have any problems with that but I need to know what's best for him.

. . .

. . . I need to know from a professional and tell me hey, you know, Sadik needs to go with his dad or Sadik is this or, you know, whatever the situation, I need that.

(Transcript at 51:12–14, 16–19; 52: 21–23; 53: 4–7, 9–11, attached at Exh. 1 to Opposition.) At the February 4, 2002 hearing on the instant matter, the court determined that a Guardian Ad Litem is still conducting an analysis of whether Sadik would be exposed to psychological or physical harm if returned to his father in Turkey. Although there is some conflicting evidence indicating that Petitioner's ICARA petition was denied in state court, in light of the Family Court's determination that the Hague Convention applies, it appears that the determination of whether the children should be returned to Turkey pursuant to the Hague Convention remains outstanding. Thus, the Court finds that the state court proceedings are ongoing.[10]

10. It is clear that the proceedings in state court are judicial in nature, as they involve matters relating to dissolution of marriage, custody, and the Hague Convention and ICARA. *See Bouvagnet,* 2001 WL 1263497, at *3 (N.D.Ill. Oct.22, 2001) (stating that it is undisputed that the dissolution of marriage

### 2. Important state interests are implicated

The second *Younger* element requires that important state interests are implicated. It is well-settled that states have a strong interest in domestic relations matters generally and child custody questions in particular. *See Moore v. Sims*, 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). "The realm of domestic relations is and has been traditionally governed by state law." *Bouvagnet*, 2001 WL 1263497, at *4 (N.D.Ill. Oct.22, 2001) (quoting *Kitchens v. Bowen*, 825 F.2d 1337, 1340 (9th Cir.1987)). The divorce proceeding (which includes matters of domestic violence), the child custody action, and the ICARA petition thus all implicate important state interests. The Court notes that although an ICARA petition is not the same as a custody proceeding, an ICARA petition "unquestionably 'raise[s] issues which involve domestic relations,' which is a state interest." *Bouvagnet*, 2001 WL 1263497, at *4 (N.D.Ill. Oct.22, 2001) (quoting *Gerbatsch v. Gerbatsch*, 99–cv–728–J, 5 (S.D.Cal. 1999)).[11]

### 3. There is an adequate opportunity in the state proceeding to raise the federal issues

Finally, with respect to the third *Younger* requirement, ICARA explicitly vests concurrent jurisdiction over Hague Convention claims in federal and state courts. *See* 42 U.S.C. § 11603(a). As such, there is a strong presumption that state court provides a petitioner with an adequate opportunity to litigate his Hague Convention claims.

Thus, as all three requirements under *Younger* are satisfied, this Court is obligated to abstain from hearing the instant Petition. In the alternative, the Court also finds abstention proper under *Colorado River*.

### B. Colorado River doctrine

 Under exceptional circumstances, a federal district court may abstain from adjudicating a controversy before it "for reasons of wise judicial administration." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Before determining that abstention is warranted, the district court must first determine whether the state and federal proceedings are parallel. *New Beckley Mining Corp. v. International Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir.1991). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* Here, it is undisputed that the parties litigating in state and federal court are the same. As for the issues, Petitioner vigorously argues that the Hague Convention was only briefly mentioned in the Family Court proceedings. However, as discussed above, not only did Petitioner file a petition under the Hague Convention, but the transcript of the October 10 proceeding reveals that the court carefully addressed the very issues under the Hague Convention that Petitioner here litigates. The court discussed the "habitual residence" of Sadik;

---

and the custody proceedings pending in the state court are judicial in nature).

As stated earlier, it is unclear whether certain final decisions have been made by the Family Court on Petitioner's ICARA petition. If there were, they may bear on this Court's analysis under *Younger*, namely whether the state court proceedings are ongoing. However-

er, they would not bear on the Court's analysis under *Colorado River*.

**11.** The Court notes that the State of Hawaii is one of the few states which has created a court of specialization to hear family matters. The State's interest in adjudicating the instant matter is especially implicated.

carefully considered the facts surrounding any potential harm should Sadik be returned to his father in Turkey; as well as other legal issues regarding the Hague Convention as applied to the instant case. Accordingly, the Court finds the state and federal proceedings to be parallel.

■■■■ Once a court determines that the proceedings in state court and federal court are parallel, the court must consider those factors set forth in *Colorado River* and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), to determine if the circumstances are such that it is proper for the court to abstain. To determine whether "exceptional" circumstances exist to warrant the granting of a stay or dismissal, the court is to balance a number of factors:

 (1) Jurisdiction Over the Res;

 (2) Inconvenience of the Federal Forum;

 (3) The Desirability of Avoiding Piecemeal Litigation;

 (4) The Order in which Jurisdiction Was Obtained;

 (5) The Rule of Decision;

 (6) Inadequacy of the State Court Proceedings to Protect the Federal Litigant's Rights; and

 (7) Forum Shopping.

*See Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364 (9th Cir.1990) (citing *Colorado River* and *Moses H. Cone Mem'l Hosp.*). This list is not exhaustive and no one factor is necessarily determinative. *See id.* at 1368; *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.1989). How each factor is weighed depends on the facts of each case. Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one. *See Travelers*, 914 F.2d at 1369.

### 1. *Jurisdiction Over the Res*

■■ The first factor—whether a court has assumed jurisdiction over any res or property—is neutral for the Court's analysis. Because Petitioner's claim under the Hague Convention does not involve any physical property, this first factor is not applicable here.

### 2. *Inconvenience of the Federal Forum*

With respect to the second factor, the relative convenience of the forums, the question is whether the inconvenience of the federal forum is so great that this factor points toward abstention. *See Beidas*, 939 F.Supp. at 737. Here, the geographic location of the federal forum is no less convenient to either party than the state forum. Accordingly, this factor carries no weight. *See Beidas*, 939 F.Supp. at 737 (finding the second factor to carry no weight because the federal forum is located down the street from the state forum).

### 3. *Desirability of Avoiding Piecemeal Litigation*

This factor—the desirability of avoiding piecemeal litigation—involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation. *Beidas*, 939 F.Supp. at 737. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different result." *Id.* (quoting *Travelers*, 914 F.2d at 1368). Here, an exceptional danger exists that piecemeal litigation might occur. As the court in *Beidas* put it,

 [U]nder Hawaii law, res judicata does not apply until there is a final judgment on appeal. This means that even if the state court decides this matter first, the federal court must continue to entertain it until a final judgment on appeal is reached. This significantly increases

the amount of time in which the case may remain in federal court. The chance of duplicative litigation, not to mention inconsistent results, is thus quite high.

*Beidas,* 939 F.Supp. at 737. Here, the state court has considered and continues to consider issues that Petitioner is asking this Court to decide. The risk of inconsistent results therefore is extremely high. This factor weighs heavily in favor of abstention.

### 4. The Order in Which Jurisdiction Was Obtained

The fourth factor—the order in which jurisdiction was obtained—is not measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in each Action. *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 21, 103 S.Ct. 927. Here, Petitioner filed his petition in state court in October 2001 and in federal court in December 2001, thus the time differential between the two filings is insignificant February 8, 2002. However, and more importantly, it is apparent that substantial progress in the state case has occurred. For example, there have been numerous hearings in state court, a Guardian Ad Litem who was appointed and is conducting an investigation, etcetera. However, virtually no activity in the case has occurred in this Court.[12] Accordingly, this factor weighs heavily in favor of abstention.

### 5. The Rule of Decision

The fifth factor—the rule of decision—requires the court to examine whether state or federal law controls. It is indisputable that the presence of federal questions weighs heavily against abstention. *See Moses H. Cone Mem'l Hosp.,* 460 U.S.

at 26, 103 S.Ct. 927 ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender."); *Colorado River,* 424 U.S. at 815 n. 21, 96 S.Ct. 1236 ("[T]he presence of a federal basis for jurisdiction may raise the level of justification needed for abstention."). However, where state law issues predominate, the source of law is of diminished importance. *Johns v. Rozet,* 770 F.Supp. 11, 16 (D.D.C.1991). Here, an ICARA petition unquestionably "raise[s] issues which involve domestic relations," which involve the application of state law. *See Bouvagnet,* 2001 WL 1263497, at *4 (N.D.Ill. Oct.22, 2001) (quoting *Gerbatsch v. Gerbatsch,* 99–cv–728–J, 5 (S.D.Cal. 1999)) (so stating in applying the second element of the *Younger* doctrine). Moreover, although the enabling legislation is federal, the statute specifically provides for the issues to be heard in either state or federal court. Accordingly, as the instant issues are equally appropriate for adjudication in state as well as federal court, this factor is neutral for the Court's analysis.

### 6. Inadequacy of the State Court Proceeding to Protect the Federal Litigant's Rights

The sixth factor involves the state court's adequacy to protect federal rights, not the federal court's adequacy to protect state rights. *See Travelers,* 914 F.2d at 1369 (citing *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 26, 103 S.Ct. 927). As the federal enabling legislation provides for an ICARA petition to be heard in either federal or state court, there is no concern that Petitioner's federal rights will be inadequately protected in state court. Accordingly, this factor does not weigh in favor of either party.

---

**12.** Ironically, the parties were planning to use state court findings as evidence to support their positions in this Court.

### 7. Forum Shopping

The final factor—forum shopping— weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules. *See Travelers,* 914 F.2d at 1370 (citing *Nakash,* 882 F.2d at 1417, and *American Int'l Underwriters, (Philippines), Inc. v. The Continental Insur. Co.,* 843 F.2d 1253, 1259 (9th Cir. 1988)). Here, Petitioner vigorously litigated his ICARA petition in state court for three months prior to seeking resolution of the matter in federal court. It appears from the record that Petitioner, unhappy with the proceedings in state court, is attempting to obtain a different result from the federal court. This is classic forum shopping.

On balance, the *Colorado River* factors weigh heavily in favor of this Court's abstention.

As the elements under *Younger* and, alternatively, under *Colorado River* dictate that abstention is proper, the Court finds that it must abstain from hearing the instant action. Accordingly, Respondent's Motion to Dismiss is hereby GRANTED.

### CONCLUSION

Based on the foregoing, the Court will abstain as required by both *Younger* and *Colorado River,* and Respondent's Motion to Dismiss is hereby GRANTED.

IT IS SO ORDERED.