# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-1160

_____

Sagi Barzilay,

       Plaintiff – Appellant,

v.

Tamar Barzilay,

       Defendant – Appellee.

Appeal from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted: June 9, 2008
Filed: August 4, 2008

_____

Before MURPHY, BYE and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Through this action Sagi Barzilay seeks the return to Israel of the children from his marriage to Tamar Barzilay, by invoking the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670 (Hague Convention). Tamar previously petitioned a state court to modify custody provisions in their Missouri divorce decree. Sagi moved to dismiss her petition on the grounds that the state court lacked jurisdiction over the children's custody because of a prior decree issued by an Israeli court, and he then initiated this federal action under the International Child Abduction Remedies Act, the Hague Convention's implementing statute. 42 U.S.C. § 11601 et seq. (ICARA). Tamar moved to dismiss the federal

action for failure to state a claim. The district court abstained sua sponte under Younger v. Harris, 401 U.S. 37 (1971), concluding that Sagi had an adequate opportunity to litigate his Hague Convention claims in the ongoing state court proceedings. Sagi appeals, and we reverse.

## I.

The United States and Israel are both signatories to the Hague Convention which was adopted in 1980 to address the problem of intercountry child abduction under international law. The Convention seeks to "protect children internationally from the harmful effects of their wrongful removal or retention" caused either by the removal of a child from the state of its habitual residence or the refusal to return a child to the state of its habitual residence. Hague Convention Preamble, T.I.A.S. No. 11670; see Mozes v. Mozes, 239 F.3d 1067, 1070–71 (9th Cir. 2001). The Convention is not directed at kidnappings by strangers, but rather at the "unilateral removal or retention of children by parents, guardians or close family members." Beaumont & McEleavy, The Hague Convention on International Child Abduction 1 (1999), cited in Mozes, 239 F.3d at 1070. The principal objectives of the Convention are "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State  are effectively respected in the other Contracting States." Hague Convention art. 1, T.I.A.S. No. 11670; see also Silverman v. Silverman, 338 F.3d 886, 897 (8th Cir. 2003) (en banc) (Silverman II); Shalit v. Coppe, 182 F.3d 1124, 1127 (9th Cir. 1999).

A party invokes the protections of the Convention in the United States by filing a petition in either federal or state court under ICARA (Hague petition). 42 U.S.C. § 11603(b) ("Any person seeking to initiate judicial proceedings under the Convention for the return of a child . . . may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and

which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed."); see § 11603(a) (vesting concurrent original jurisdiction over Hague petitions in the state and federal courts). ICARA further provides that "[t]he court in which an action is brought under [§ 11603(b)] shall decide the case in accordance with the Convention." § 11603(d).

The key inquiry under the Convention is whether a child has been wrongfully removed from the country of its habitual residence or wrongfully retained in a country other than that of its habitual residence. A retention or removal is wrongful only if it meets the requirements of Article 3 of the Convention:

> The removal or the retention of a child is to be considered wrongful where –
>
> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention art. 3, T.I.A.S. No. 11670.

When deciding whether a child was wrongfully removed under this article, a court must thus determine when the removal or retention took place, what the habitual residence of the child was immediately prior to the removal, whether the removal or retention violated the petitioner's custody rights under the law of habitual residence, and whether the petitioner was exercising those rights at the time of the removal. See Mozes, 239 F.3d at 1070. Once it is determined that a child who was habitually residing in a contracting state was wrongfully removed to or retained in another, the

-3-

Convention requires that the country in which the child is located "order the return of the child forthwith." Hague Convention art. 12, T.I.A.S. No. 11670. Moreover, "until it has been determined that the child is not to be returned under this Convention," the authorities of the contracting state responsible for child custody determinations "shall not decide on the merits of rights of custody." Id. art. 16.

A case arising from a petition under the Hague Convention is not a custody proceeding. A United States district court "has authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim." Shalit, 182 F.3d at 1128; see 42 U.S.C. § 11601(b)(4); Hague Convention art. 19, T.I.A.S. No. 11670. The district court is to ascertain "only whether the removal or retention of a child was 'wrongful' under the law of the child's 'habitual residence,' and if so, to order the return of the child to the place of the 'habitual residence' for the court there to decide the merits of the custody dispute." Shalit, 182 F.3d at 1128.

II.

Sagi and Tamar are both Israeli citizens. At the time of their marriage in 1994 they resided in Tel Aviv, Israel. They have three children, all of whom are Israeli citizens; the youngest two are also American citizens. None of the children have lived in Israel for an extended period of time. In 2001 the family moved to Missouri from the Netherlands, and Tamar and the children have lived there since that time. On January 6, 2005 a Missouri state court entered a divorce decree in accordance with an agreement reached by the parties. The decree established joint custody of the children.

In the divorce decree the parties agreed that upon the repatriation of one parent to Israel, the other parent would "forthwith" return to Israel with the minor children to live. On September 15, 2005 Sagi repatriated to Israel, but Tamar and the children remained in Missouri. Sagi contends that Tamar consistently expressed her intention

to repatriate to Israel with the children in accordance with the divorce decree but refused to commit to a timeline for complying.

In June 2006 Tamar took the children to Israel for a visit, intending to return to the United States on July 9, 2006. They were accompanied by Matt Johnson, the man whom Tamar subsequently married. On July 3, 2006 Sagi filed an ex parte request for stay of exit of minors in the family court of K'far Saba, Israel. Sagi argued that Tamar had violated the Missouri court decree by failing to repatriate to Israel with the children. Tamar states that she was informed of this proceeding on July 4, 2006 and was compelled to participate in it because Sagi had possession of the children's passports.

The parties entered into a consent agreement. Tamar agreed to an interim international parenting agreement pending her repatriation to Israel consistent with the Missouri divorce decree and to repatriate to Israel with the children by August 1, 2009. The parties agreed that Tamar's repatriation by the appointed date was an "irrevocable commitment" and that the "sole and only international authority in regards to the minors' immigration, repatriation and custody" was the court in K'far Saba.

Tamar expressly agreed not to file a custody petition in Missouri or in any place other than Israel and that any petition filed in Missouri or any other court outside of Israel would be transferred to an Israeli court. She also agreed that "[n]ot returning the minors to the state of Israel by the appointed time is regarded as kidnapping" in violation of the Hague Convention. As security for being allowed to leave Israel with the children, Tamar had to pay Sagi $200,000 and post her Missouri house as collateral. Tamar admits that she was represented by competent counsel in the Israeli proceedings. The consent agreement was formalized in a verdict of the Israeli court. Tamar testified in an affidavit submitted to the federal district court that she only signed the Israeli consent agreement so that she would be permitted to leave the country with the children and that she had no intention of complying with its terms.

-5-

On December 3, 2006, Sagi sued Tamar in the Israeli court, on the grounds that she had not complied with the consent decree by refusing to permit the children to visit Israel as agreed upon in the consent agreement. In response Tamar retained counsel in Israel and challenged the judgment that was entered upon the consent agreement. On July 3, 2007, the Israeli court issued a judgment holding Tamar in contempt of court for failing to return the children to Israel for a visit as required under the agreement and ordered her to do so by July 10, 2007. She appealed, but the lower court was affirmed on November 26, 2007.

Meanwhile on June 6, 2007, Tamar filed a petition in Missouri state court to modify the couple's divorce decree to restrict Sagi's visitation rights with the children and a month later she moved for a temporary restraining order to prevent the enforcement of the Israeli judgment requiring her to send the children to Israel by July 10. Sagi entered an appearance for limited purpose in state court to challenge its jurisdiction, but at no time did he file a Hague petition there. On October 16, 2007, the state court issued an order denying Sagi's motion to dismiss or in the alternative to decline jurisdiction. In its two page order the court stated that "[t]he mere presence of the minor children on vacation in Israel is insufficient to establish a 'habitual presence' [under ICARA]."

Sagi filed this suit in the Eastern District of Missouri on October 18, 2007, seeking immediate access to the children and their return to Israel under ICARA. 42 U.S.C. § 11603(b). Tamar moved to dismiss for failure to state a claim under the Hague Convention and ICARA, arguing that because the children's habitual residence was Missouri and they had never been wrongfully removed from their habitual residence, Sagi could not state a claim under the Hague Convention or ICARA.

The district court first addressed whether it had subject matter jurisdiction under ICARA to determine whether the children were wrongfully detained in Missouri. It decided that it had and then considered whether it should address the substantive issues in light of the ongoing state proceeding. It abstained from hearing the case

-6-

pursuant to Younger, 401 U.S. at 37, to avoid interfering with a state court ruling on what it considered the merits of a Hague Convention claim.

On appeal Sagi argues that there was not a Hague petition pending before the state court and that Younger abstention is not an appropriate reason for the district court to avoid hearing this case. He suggests that the fact that the state court used the term "habitual presence" in its decision does not preclude him from bringing a Hague petition under ICARA. Sagi contends that international law and comity, as well as ICARA's emphasis on the need for uniformity in its interpretation, all strongly weigh against abstention. He further argues that the district court erred by deferring to the state court action because Tamar brought it in violation of the Israeli court judgment which was based on a duly executed consent agreement. Sagi also asserts that Tamar's petition to modify the divorce decree and the state court in its rulings ignored the Israeli consent decree, in which the parties had expressed their joint intention on the habitual residence of the children. Tamar responds that the district court properly abstained under Younger because the state court made a determination of the children's "habitual residence" after that issue had been briefed and argued.

III.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), quoted in Silverman v. Silverman, 267 F.3d 788, 792 (8th Cir. 2001) (Silverman I); see Cohens v. Virginia, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."). The Supreme Court has articulated several abstention doctrines as exceptions to this rule, one of which is the Younger doctrine. See Younger, 401 U.S. at 37. Younger abstention is premised on notions of federalism and comity, and we review the district court's application of the doctrine for abuse of discretion. Silverman I, 267 F.3d at 792.

In order for a federal court to abstain under the <u>Younger</u> doctrine there must be an ongoing state proceeding which implicates important state interests and which affords an adequate opportunity to raise the federal issues. <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982); <u>Silverman I</u>, 267 F.3d at 792. The Hague Convention requires that state court custody proceedings be stayed until the resolution of the Hague litigation. Hague Convention art. 16, T.I.A.S. No. 11670 ("[T]he judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained <u>shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention</u>.") (emphasis added); <u>Yang v. Tsui</u>, 416 F.3d 199, 201 (3d Cir. 2005). While ICARA does not have a similar express provision, the purpose of the Convention is to "provide for a reasoned determination of where jurisdiction over a custody dispute is properly placed." <u>Yang</u>, 416 F.3d at 203. It is thus "consistent with this purpose that it is the custody determination, not the Hague Convention Petition, that should be held in abeyance if proceedings are going forward in both state and federal courts." <u>Id.</u> The pendency of state custody proceedings therefore does not support <u>Younger</u> abstention in the Hague Convention context.

Moreover, given that Sagi obtained a custody determination from an Israeli court and Tamar has obtained a custody determination from a state court in this country, the federal district court is uniquely situated to adjudicate the question of whether Israel or Missouri is the habitual residence of the Barzilay children and whether they were wrongfully removed from that residence. <u>See id.</u> at 204; 42 U.S.C. § 11601(b)(3)(B) (emphasizing "the need for uniform international interpretation of the Convention"). Although the state clearly has an important interest in child custody matters, that interest has not been considered to be a significant factor in terms of abstention where ICARA is involved. <u>See Yang</u>, 416 F.3d at 204 ("It would make the Hague Convention and ICARA meaningless if a federal court abstained in a Hague Convention Petition because child custody was being disputed in state court.").

The parties dispute whether the state court proceedings afforded Sagi an adequate opportunity to raise the Hague Convention issues. The controlling case in our circuit is Silverman I, which concluded that abstention was inappropriate in Hague Convention cases. 267 F.3d at 792. Silverman I involved a family which had been living in Israel but had previously resided in Minnesota. The mother returned to Minnesota with the children and filed for divorce and child custody in state court. The father filed a Hague petition in federal district court seeking the return of the children. He objected in the custody proceedings that the state court lacked subject matter jurisdiction and asserted "that the court should not reach the merits of the custody issue" because the children were in Minnesota as a result of an alleged wrongful removal from Israel, the merits of which were to be litigated in federal court. Id. at 790. The mother argued for abstention in the federal court, and the district court abstained because father had "failed to show that the state courts will not afford him adequate opportunity to litigate" a Hague petition. Id., quoting Silverman v. Silverman, No. 00-2274, slip. op. at 6 (D. Minn. Nov. 13, 2000).

In reversing we saw a "fundamental defect in the federal district court's decision to dismiss [father's] Hague petition on abstention grounds." Silverman I, 267 F.3d at 792. We noted that federal courts have the power to abstain "'only where the relief sought is equitable or otherwise discretionary.'" Id. at 792, quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 707 (1996). Because the Hague Convention "mandates that a court that receives a valid Hague petition must determine whether the child has, in fact, been wrongfully removed," the district court should not have dismissed it. Id. at 792. In a later en banc proceeding we held that a state court custody order did not divest the federal district court of jurisdiction to determine whether the children had been wrongfully removed from their habitual residence. Silverman II, 338 F.3d at 893–95. In considering these issues, we noted that "abstention does not apply in Hague Convention cases." Id. at 891, citing Silverman I, 267 F.3d at 792.

The district court in this case sought to distinguish Silverman I, citing the Third Circuit's decision in Yang which recognized situations in which the Hague Convention issues could be litigated in state court:

> [i]n a situation where there is a state court custody proceeding and a petition is filed in federal court under the Hague Convention, but the Hague Convention has not been raised, or raised but not litigated, in the state court, the federal court has generally found that abstention is not appropriate. Where the Hague Convention Petition has been raised and litigated in the state court, abstention by the federal court has generally been found to be appropriate.

416 F.3d at 202. According to the district court, the Silverman I state court proceedings only involved custody issues but in this case the state court reached the merits of the Hague Convention question of habitual residence of the Barzilay children by stating that "[t]he mere presence of the minor children on vacation in Israel is insufficient to establish a 'habitual presence' [under ICARA]." Based on this, the district court concluded that a Hague petition had been litigated in the state court and that abstention was justified. We disagree.

It is the "petitioner [who] is free to choose between state or federal court." Yang, 416 F.3d at 203. Neither Tamar nor Sagi filed a Hague petition in state court. Tamar merely referenced the Hague Convention twice. In her motion to modify the divorce decree, Tamar stated that Sagi used the Israeli court system "to fraudulently procure a judgment giving Israel exclusive jurisdiction over the custody of the minor children . . . in blatant defiance of . . . the Hague Treaty on Child Abduction." She did not reference the terms of the Hague treaty or explain how Sagi's use of the Israeli court system implicated the treaty. In her motion for a temporary restraining order, Tamar argued that the Israeli judgment need not be respected because that court lacked subject matter jurisdiction and should have deferred to the Missouri court given its existing custody judgment and the habitual residence of the children. She also complained that Sagi's use of the Israeli court system "violated the spirit, if not the letter, of the Hague Convention."

At no time did Tamar file a Hague petition in the Missouri court. She did not request the state court to make a habitual residence determination under the Hague Convention. The determination of a child's habitual residence presents mixed questions of law and fact and requires the analysis of many factors, including the settled purpose of the move to the new country from the child's perspective, parental intent regarding the move, the change in geography, the passage of time, and the acclimatization of the child to the new country. See Silverman II, 338 F.3d at 897–98; Mozes, 239 F.3d at 1071–81. She also did not allege or ask the state court to rule that Sagi had wrongfully removed the children to Israel or wrongfully retained them there. She referenced the Hague Convention only to further her argument for a temporary restraining order preventing the enforcement of the Israeli action.

Sagi's special appearance in Missouri was for the "limited purpose of opposing [the state court's] jurisdiction." Like the father in Silverman I, Sagi restricted his state court arguments to jurisdictional issues. He never raised the Hague Convention before the state court except to contest its exercise of jurisdiction, just as the father in Silverman I had done. See 267 F.3d at 792 ("[T]he Hague issues were raised in the state court only by way of support for his argument that the state court should not have ruled on the custody issue until the federal court resolved the Hague issues."). The record shows that throughout the state court proceedings Sagi emphasized the limited nature of his argument as being only jurisdictional. Sagi never engaged in an argument in the state court on the merits of the Hague Convention considerations – habitual residence and wrongful removal. Rather, he informed the state court that he intended to file a Hague petition in federal district court to litigate the merits of the Hague issues in that forum.

The only distinction between Silverman I and the case before us is that in Tamar's case the Missouri court made a comment on a relevant issue under the Hague Convention, even though no Hague petition was pending. Rather than analyzing the jurisdictional arguments, however, the state court simply stated without citation to legal authority that "[t]he mere presence of the minor children on vacation in Israel is

-11-

insufficient to establish a 'habitual presence'." It ignored what effect, if any, the judgments of the Israeli court should have on its analysis, including the Israeli verdict formalizing the consent agreement in which the parties agreed that Israel was the habitual residence of the children.[1] Moreover, the second part of the Hague Convention inquiry was not undertaken, for the court did not analyze whether a wrongful removal or retention had occurred. See Shalit, 182 F.3d at 1128 (the court entertaining a Hague petition must examine whether the removal or retention of a child was "wrongful" under the law of the child's habitual residence).

Because neither parent filed a Hague petition in state court, we conclude that the Hague Convention issues were not properly or fully raised in that proceeding. The parties did not litigate the merits of such issues, and any statement by the state court touching on an issue under the Hague Convention inquiry is not controlling. It is "the petitioner [who] is free to choose between state or federal court," Yang, 416 F.3d at 203, and in the absence of a Hague petition the state court proceeding did not present an adequate opportunity to litigate ICARA issues. It was therefore an abuse of discretion for the district court to abstain.

As Silverman I and Silverman II made clear, the law in this circuit does not favor abstention in Hague Convention cases. See 267 F.3d at 792 ("[A]bstention principles do not permit an outright dismissal of a Hague petition."); Silverman II, 338 F.3d at 891 ("[A]bstention does not apply in Hague Convention cases."); 42 U.S.C. § 11603(d) ("The court in which an action is brought under [§ 11603(b)] shall decide the case in accordance with the Convention.") (emphasis added). Had a Hague petition been properly brought in state court and had that court rendered a decision on the merits of that petition, the proper response to a subsequent petition brought in federal court would have been to give full faith and credit to the state court decision

---

[1]Although there is a suggestion in the record before us that the proceeding in the Israeli court was brought pursuant to that country's laws implementing the Hague Convention, the record does not establish that. That issue will need to be explored by the district court on remand.

and dismiss the petition on that basis. <u>See</u> 42 U.S.C. § 11603(g) ("Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter.").

In reaching our decision we express no opinion on the issues of the habitual residence of the children or of wrongful removal or retention and leave those for the district court. At this point we only recognize the father's right under the Convention to file a Hague petition and to have those issues decided by a court of competent jurisdiction.

IV.

We reverse and remand to the district court for determination of the merits of the issues raised by Sagi's petition under the Hague Convention.

_____