# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 15, 2013

Lyle W. Cayce
Clerk

No. 11-41204

EDUARDO HENRIQUE VASCONCELOS, also known as Eduardo Henrique
Medeiros Pinto De Vasconcelos,

Plaintiff-Appellant

v.

MICHELLY DE PAULA BATISTA,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:10-CV-628

Before REAVLEY, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Appellant Eduardo Henrique Vasconcelos petitioned for the return of his
child, B.V., to Brazil under the Hague Convention on the Civil Aspects of
International Child Abduction ("Hague Convention" or "Convention"), Oct. 25,
1980, T.I.A.S. No. 11,670, 19 I.L.M. 1501, which was implemented in the United
States by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-41204

§§ 11601–11611. The district court denied Mr. Vasconcelos's petition for return. For the reasons that follow, we AFFIRM.

This case involves a child named B.V., who was 13 years old at the start of district court proceedings in January 2011 and who is now 15 years old.[1] In 2005, B.V. was removed from her former place of residence, the State of Alagoas in Brazil, by her mother, Appellee Michelly De Paula Batista. Ms. Batista had primary custody over B.V. pursuant to a joint custody agreement with Mr. Vasconcelos. Ms. Batista and Mr. Vasconcelos were never married. Ms. Batista removed B.V. from Brazil without Mr. Vasconcelos's consent. After leaving Brazil, Ms. Batista moved with B.V. to Denton, Texas, where she married Rod Richards, who has been B.V.'s stepfather since.

With the assistance of Brazil's Central Authority,[2] Mr. Vasconcelos filed a Petition for Return of the Child under the Convention. Pursuant to the jurisdictional provisions of the Convention and ICARA, § 11603(a)–(b), and because B.V. resided in Denton, the petition was brought before the District Court for the Eastern District of Texas. The hearing included an *in camera* interview between a magistrate judge and B.V., in which B.V. was represented by a guardian ad litem and in which she apparently stated her desire to remain in the U.S. and not to meet Mr. Vasconcelos.

On appeal, Mr. Vasconcelos argues *inter alia* that the district court erred in concluding that he had not established a prima facie case under the Hague Convention, namely because he had not shown that he had custody rights under

---

[1] B.V. will turn 16 this September, at which point the Convention would no longer apply to her. Hague Convention art. 4.

[2] The Hague Convention provides that each signatory country "shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities." Hague Convention art. 6. Brazil's Central Authority is the Office of the *Secretaria Especial dos Direitos Humanos da Presidência da República* ("the Special Secretariat for Human Rights of the Presidency of the Republic"). The United States's Central Authority is the Office of Children's Issues in the Department of State.

No. 11-41204

Brazilian law; and that the district court erred in applying the Convention's age and maturity exception, which permits the court to deny the child's return where the child is of sufficient age and maturity for her wishes to be taken into account and she has objected to her return.[3]

I.

As explained below, we conclude that this appeal may be resolved under the Hague Convention's age and maturity exception. Therefore, we deem it unnecessary to discuss the threshold issue of whether Mr. Vasconcelos has established a prima facie case under the Convention. Like the district court, we assume *arguendo* that Mr. Vasconcelos had custody rights under Brazilian law, and thus that he successfully established a prima facie case.

II.

The Hague Convention provides that "[t]he judicial or administrative authority [considering a petition] may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention art. 13. This age and maturity exception is to be narrowly construed and must be shown by a preponderance of the evidence. *England v. England*, 234 F.3d 268, 272 (5th Cir. 2000) (citing §§ 11601(a)(4), 11603(e)(2)(A)). We conclude that the district court's findings with respect to this exception were not clearly erroneous.

**1. B.V.'s age and maturity**

---

[3] Mr. Vasconcelos has also raised a third point of error, namely that the district court erred in finding that Ms. Batista had shown the well-settled exception to the Hague Convention. The Convention provides that where, as here, a parent has filed a petition for return of a child one year or more after the alleged wrongful removal, the judicial or administrative authority overseeing the case is required to order the child's return, "unless it is demonstrated that the child is now settled in its new environment." Hague Convention art. 12. The well-settled exception has never been considered by this Court. Because we resolve Mr. Vasconcelos's appeal on another ground, we decline to discuss this exception.

3

No. 11-41204

Whether the child has reached an appropriate age and degree of maturity is a factual determination and thus subject to clear error review. *See Dietz v. Dietz*, 349 F. App'x 930, 934 (5th Cir. 2009) (citing *England*, 234 F.3d at 272). "[G]iven the reliance on live oral testimony, 'the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witness[es].'" *Id.* (quoting *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005)).

"The Convention does not set an age at which a child is automatically considered to be sufficiently mature, rather the determination is to be made on a case-by-case basis." *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 279 (3d Cir. 2007). B.V.'s age of 13 at the start of district court proceedings is consonant with that of other children whom courts have found to be of sufficient age and maturity for the purposes of this exception.[4]

Mr. Vasconcelos's only cogent argument regarding B.V.'s age and maturity is that Ms. Batista unduly influenced B.V.'s opinion and tainted B.V.'s judgment. In particular, Mr. Vasconcelos contends that "over the approximately 5 years since the abduction, [Ms. Batista] has told B.V. that Mr. Vasconcelos was violent towards her and that he hit her, 'gradually' adding more detail to the story as B.V. became 'able to absorb and process according to her age.'" Mr. Vasconcelos cites the Third Circuit, which stated that "[i]n making its determination, a court

---

[4] *See, e.g.*, *deSilva v. Pitts*, 481 F.3d 1279, 1286–87 & n.7 (10th Cir. 2007) (exception applied where child was 13); *Man v. Cummings*, No. CV 08-15-PA, 2008 WL 803005, at *2, *4 (D. Or. Mar. 21, 2008) (exception applied where child was 13 and had objected to her return during an *in camera* interview); *McManus v. McManus*, 354 F. Supp. 2d 62, 71 (D. Mass. 2005) (exception applied where children were 14-year-old twins); *Diaz Arboleda v. Arenas*, 311 F. Supp. 2d 336, 343 (E.D.N.Y. 2004) (exception applied where children were 12 and 14 and had objected to their return during an *in camera* interview); *but see England*, 234 F.3d at 269, 272 (holding that district court erred in determining that a child, who was 13 years old, was of sufficient age and maturity, where the district court's finding of sufficient age and maturity was based entirely on the child's wishes to remain in the United States, which constituted a "non sequitur").

should also consider whether a child's desire to remain or return to a place is 'the product of undue influence,' in which case the 'child's wishes' should not be considered." *Tsai-Yi Yang*, 499 F.3d at 279 (quoting *de Silva*, 481 F.3d at 1286, and citing Hague Int'l Child Abduction Convention: Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,509 (Mar. 26, 1986)).

Mr. Vasconcelos's argument cannot prevail under a clear error standard. First, even if we accept that there is some evidence that B.V. had a skewed perception of Mr. Vasconcelos, we are not convinced that that evidence rose to the level of undue influence such that the district court clearly erred in its age and maturity findings. Notably, there is no evidence that Ms. Batista coerced B.V. into objecting to return. *See Tsai-Yi Yang*, 499 F.3d at 279 ("At the [*in camera*] hearing, Dr. Bernstein testified that he did not think that [the child] demonstrated any signs of coercion, although he admitted that her time and experiences with her father had a major impact on her desire to remain in Pittsburgh."). On the contrary, Ms. Batista's testimony reflects that she was sensitive to B.V.'s youth and did not want to influence B.V.'s opinions too soon.[5] Further, even if B.V.'s perception of her biological father was one-sided, that one-sidedness stemmed in great part from the fact that Mr. Vasconcelos never reached out to B.V. from the time she was taken from Brazil up until the start of these proceedings, although he knew B.V.'s whereabouts, knew how to contact her, and had authorization to travel outside Brazil.

---

[5] Ms. Batista testified, "I told [B.V.] that when she is older and she can understand it better, I would explain to her [why they left Brazil] and tell her about the details, but as for now that this would be the best solution for her."; "At -- at that time [when they arrived in Denton] I didn't tell her that I was running away from a -- an abusive man who was threatening me -- threatening to kill me, and that I had found love in Rod [Richards]."; "Gradually, as she's gotten older, I have been able to provide her with pieces of information that I felt that she would be able to absorb and process according to her age. When she was eight, I told her, you know, your father wasn't cool with your mom, you know."

No. 11-41204

Finally, we disagree with Mr. Vasconcelos's suggestion that B.V.'s *in camera* interview was an improper basis for the district court's age and maturity findings. The interview was conducted by the magistrate judge, during which B.V. was represented by an attorney ad litem. After the interview, the magistrate judge found that

> [I]t is appropriate to take into account BV's views here. Although softspoken and understandably shaken by the prospect of leaving the United States, she demonstrated an understanding of the proceedings and of her right to state her preferences. She is a good student, demonstrated clear cognitive abilities, and stated a desire to remain with her mother and stepfather. The Court finds that her wishes are another basis to deny Petitioner's request for her return to Brazil.

These findings are perfectly reasonable, and Mr. Vasconcelos has not argued that the interview was somehow defective under Texas law.[6]

The question of whether B.V. was of sufficient age and maturity is at heart a fact-intensive inquiry. Mr. Vasconcelos has given us no reason to second-guess the district court, which had a unique "opportunity to observe [the child] in person." *de Silva*, 481 F.3d at 1287. As such, this Court "accord[s] great deference to the [district] court's findings based on that experience." *Id.* We conclude that the district court did not clearly err in its findings with respect to B.V.'s age and maturity.

**B. Whether B.V. objected to being returned to Brazil**

Even if B.V. was of sufficient age and maturity for her views to be taken into account, the age and maturity exception is not satisfied unless B.V. also objects to her return. Hague Convention art. 13. Although there is no case law directly on-point, it is logical to assume that the question of whether B.V. objected is fact-intensive, and thus the district court's finding that she objected

---

[6] Such interviews are otherwise entirely proper under Texas law. *See* TEX. FAM. CODE. ANN. § 153.009 ("Interview of Child in Chambers").

is subject to clear error review. *See de Silva*, 481 F.3d at 1287. We bear in mind that a child's "generalized desire" to remain in the United States is "not necessarily sufficient to invoke the exception"; rather, the child must "include particularized objections to returning to" the former country of residence. *Tsai-Yi Yang*, 499 F.3d at 279.

Mr. Vasconcelos argues that the Hague Convention requires B.V. to "clear[ly] object" to her return to Brazil. To show that B.V. did not clearly object, he cites the district court's statements that B.V. only "expressed an interest to remain here," and that B.V. only "stated a desire to remain with her mother and stepfather." However, inasmuch as Mr. Vasconcelos seeks to argue that the Hague Convention requires an *explicit* objection from B.V., case law does not support him. Notably, the Tenth Circuit's decision in *de Silva* undercuts his argument. In *de Silva*, the Tenth Circuit affirmed the district court's finding that the age and maturity exception applied. The court quoted approvingly the findings of the magistrate judge, who conducted an *in camera* interview with the 13-year-old child:

> This Court has also considered the [sic] Jonathan's expressed opinions as to his status in accordance with Article 13(b) of the Hague Convention. 42 U.S.C. § 11603(e)(2)(A). This Court observed Jonathan to be a bright, expressive child with a well-developed understanding of his situation and the positions of his parents. He has attained an age and degree of maturity to so consider his views. Unlike Petitioner [Ms. de Silva], this Court did not find Jonathan to be particularly swayed by lavish gifts and wealth in forming an opinion that the schools were better in Oklahoma, he enjoyed his friends and activities and his home. He is well-settled in his environment in Oklahoma and expressed his desire to remain in Oklahoma with Pitts without apparent adult indoctrination. Allowing him to remain with Pitts while an Oklahoma court determines custodial issues between his parents is in his best interests at this time.

481 F.3d at 1287; *see also id.* at 1286 n.7 (indicating the child's age). What is noteworthy is that *at no point* in *de Silva* does the child explicitly object to being

returned to his country of former residence, namely Canada. Nevertheless, the Tenth Circuit found it sufficient that the child was mature and had expressed his preference for staying in the United States. Therefore, *de Silva* contradicts Mr. Vasconcelos's contention that the child's objection need be explicit.

The facts in *de Silva* contrast with those in *Tsai-Yi Yang*, in which the Third Circuit affirmed the district court's decision to not apply the age and maturity exception because of the child's "generalized desire to remain in" the United States. 499 F.3d at 279. As the court summarized,

> [The child] informed Dr. Bernstein [a psychologist and expert witness] that she wanted to stay in Pittsburgh. Her reasons for wanting to stay included liking her school, her preference for living in a house rather than a small apartment, and having friends and brothers. She also explained that she missed her mother [the petitioner] and knew that her mother was very sick, but she was happy in Pittsburgh and had lived there for more than three years.

*Id.* Moreover, the court in *Tsai-Yi Yang* emphasized that the child's preference to stay in the United States was not derived from any particular reasons the child had for staying in this country, but rather from a generalized affinity for this country after having lived here for many years: "[I]t was the passage of time during the years of wrongful retention and litigation of this case that created [the child]'s desire to remain in Pittsburgh. If the District Court applied the exception in this case, it would encourage parents to wrongfully retain a child for as long as possible. A lengthy wrongful retention could enable the child to become comfortable in his or her new surroundings, which may create a desire to remain in his or her new home." *Id.* at 280.

B.V.'s situation is more analogous to *de Silva* than to *Tsai-Yi Yang*. Here, B.V. has not expressed a mere generalized desire or preference to stay in the United States. During her *in camera* interview with the magistrate judge, in which she was represented by an attorney ad litem, she specifically expressed that she did not want to visit her father while he was in the United States. She

also "demonstrated an understanding of the proceedings and of her right to state her preferences" and she "stated a desire to remain with her mother and stepfather." Further, B.V.'s express desire to stay with her mother and stepfather in the United States does not derive merely from some generalized affinity for this country after having lived here a long time. Rather, she has particularized ties to the United States,[7] whereas she has virtually no ties to Brazil and barely any knowledge of Mr. Vasconcelos, who has done nothing to communicate with her since she left Brazil. It was reasonable for the district court to conclude from these facts that B.V. did not simply "like" being in the United States, but specifically wished to stay here and to not be with Mr. Vasconcelos. We therefore conclude that the district court did not err in finding that B.V.'s statements constituted an objection within the meaning of the age and maturity exception.

In summary, the district court did not clearly err in finding that B.V. was of sufficient age and maturity for her wishes to be taken into account and that she objected to being returned to Brazil. We therefore affirm the district court's judgment with respect to the age and maturity exception, meaning Mr. Vasconcelos's petition for return should be denied.

AFFIRMED.

---

[7] Indeed, there is extensive evidence of B.V.'s ties to the United States, which Mr. Vasconcelos does not dispute. To highlight a few facts considered by the district court, B.V. does well in school and is involved with extracurricular activities; her life is stable in the United States, with her recent move to Pennsylvania being the first time she has left Denton since arriving in the United States more than five years ago; she has been diagnosed with epilepsy and has the resources in the United States to treat it; and she and her mother are now United States citizens.