# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 16-1268

———————————————————

Eduardo Paul Custodio

*Petitioner - Appellant*

v.

Cecilia Marianela Torres Samillan

*Respondent - Appellee*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: September 21, 2016
Filed: December 2, 2016
[Published]

——————————

Before WOLLMAN, ARNOLD, and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge.

Eduardo Paul Custodio and Cecilia Marianela Torres Samillan (Torres) are the parents of two sons, M. and G., who were born and resided in Peru until Torres removed them to the United States in 2014. Custodio now seeks M. and G.'s return to Peru under the Hague Convention on Civil Aspects of International Child Abduction (Hague Convention), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S.

89—to which Peru and the United States are parties—and its implementing statute the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001–11. The district court[1] denied Custodio's petition and we now affirm.

## Background

Custodio and Torres, both Peruvian citizens, were married for two years, separating in May 2004. Their union resulted in two children, 16-year-old M. and 15-year-old G. The couple subsequently divorced, and the Peruvian court issued a custody order pursuant to which the children lived with their mother for the majority of the year.

In November 2013, Torres sought permission from the Peruvian court to travel from Peru to St. Louis with M. and G. for medical treatment on M.'s eye and vacation for G. Without opposition from Custodio, the Peruvian court authorized M. and G.'s travel to St. Louis, requiring that they return by March 24, 2014. Torres and the children arrived in St. Louis in February 2014. Shortly thereafter, Torres married an American citizen, and the couple have since had a son.

Torres failed to return the children to Peru by the deadline. The Peruvian court denied Torres' application to extend the travel authorization, and the denial was affirmed on appeal. Custodio filed several requests seeking return of the children, and since April 2015, the Peruvian court has issued four orders compelling Torres to return M. and G. to Peru. M. and G. have not returned to Peru and currently reside with Torres, her husband, and their baby brother in the St. Louis area.

---

[1]The Honorable John A. Ross, United States District Judge, Eastern District of Missouri.

The Hague Convention entitles a person whose child has wrongfully been removed to or retained in the United States to secure the prompt return of the child to the child's country of habitual residence, unless the respondent can establish that an affirmative defense applies. See Rydder v. Rydder, 49 F.3d 369, 372 (8th Cir. 1995). On July 28, 2015, Custodio filed a petition in district court seeking return of the children under the Hague Convention and ICARA. The district court held a three-day evidentiary hearing, at which Torres appeared pro se. M. and G. testified both in chambers and in open court. On December 29, 2015, the district court denied the petition. The court assumed that Custodio had established a prima facie case for return of the children under the Hague Convention, but refused to order return because Torres established the mature child affirmative defense. Custodio timely appealed.

**Discussion**

The court addresses three issues on appeal. First, Torres argues the appeal is moot as to M. because he has now reached 16 years old and the Hague Convention no longer applies to him. Second, Custodio argues the district court erred in finding that Torres established the mature child defense. Third, even if the mature child defense applies, Custodio contends the district court abused its discretion in refusing to order return.

**I.     Mootness**

The Hague Convention states it "shall cease to apply when the child attains the age of 16 years." Hague Convention art. 4. M. turned 16 on March 25, 2016. Torres thus argues that the appeal is moot as to M. because by its terms the Convention no longer applies. Custodio argues that such an interpretation would incentivize courts and litigants to delay litigation for older children and reads the Convention only to require that the child be under age 16 at the time of the abduction.

The State Department's interpretation of the Convention's age limitation provision is in accord with Torres'. In its view, "[t]he Convention applies only to children under the age of sixteen (16). Even if a child is under sixteen at the time of the wrongful removal or retention as well as when the Convention is invoked, the Convention ceases to apply when the child reaches sixteen." U.S. Dep't of State, Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,504 (Mar. 26, 1986). "It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to great weight.'" Abbott v. Abbott, 560 U.S. 1, 15 (2010) (quoting Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 185 (1982) (deferring to the State Department's interpretation of a provision of the Hague Convention)). Custodio provides no reason to doubt that deference to the State Department's interpretation of the age cutoff is appropriate here.

The State Department's interpretation is supported by the official Hague Conference Explanatory Report, which is recognized "as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention." Barzilay v. Barzilay (Barzilay II), 600 F.3d 912, 916 n.6 (8th Cir. 2010) (quotation omitted). The Explanatory Report is plain that "no action or decision based upon the Convention's provisions can be taken with regard to a child after its sixteenth birthday." Elisa Pérez-Vera, Explanatory Report: Hague Convention on Private International Law ¶ 77 (1981), https://assets.hcch.net/upload/expl28.pdf.

Because M. turned 16 during the pendency of these proceedings, the Hague Convention no longer applies to him. The court dismisses as moot the appeal as to M. We address Custodio's remaining arguments solely as they apply to G.

## II.     Mature Child Defense

"The principal objectives of the Convention are 'to secure the prompt return of children wrongfully removed to or retained in any Contracting State' and 'to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" Barzilay v. Barzilay (Barzilay I), 536 F.3d 844, 846 (8th Cir. 2008) (quoting Hague Convention art. 1). To establish a prima facie case for return of the child under the Convention, the petitioner must show, by a preponderance of the evidence, that: (1) immediately prior to removal or retention, the child habitually resided in another Contracting State; (2) the removal or retention was in breach of the petitioner's custody rights under that State's law; and (3) the petitioner was exercising those custody rights at the time of the removal or wrongful retention. Hague Convention art. 3; Barzilay I, 536 F.3d at 847; see 22 U.S.C. § 9003(e)(1)(A) (burden of proof); West v. Dobrev, 735 F.3d 921, 929 (10th Cir. 2013). If a petitioner establishes a prima facie case, the child must be "promptly returned unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4). The district court assumed without deciding that Custodio established a prima facie case for return. Because we find that an affirmative defense applies, we also do not address whether Custodio met his initial burden.[2]

The Hague Convention establishes several affirmative defenses that must be proved by the respondent. See Hague Convention arts. 12, 13, 20. Here, Torres raised the mature child defense under Article 13 of the Convention. In order to carry her burden on this defense, Torres must establish by a preponderance of the evidence (1) that the child has "attained an age and degree of maturity at which it is appropriate to

---

[2]As we do not address Custodio's prima facie case, we need not decide whether Custodio had "rights of custody" cognizable under the Convention. Hague Convention art. 5. This argument was not fully developed before the district court or before us, and the court has previously recognized that distinguishing between custody rights and access rights "can be a complex question." Barzilay II, 600 F.3d at 921 n.9.

take account of its views" and (2) "that the child objects to being returned." Hague Convention art. 13; see 22 U.S.C. § 9003(e)(2)(B) (burden of proof); <u>Rodriguez v. Yanez</u>, 817 F.3d 466, 474 (5th Cir. 2016). Like all defenses under the Hague Convention, the court construes the mature child defense narrowly. <u>Rydder</u>, 49 F.3d at 372. The child's objections can be the sole reason that a court refuses to order return, but when they are, the "court must apply a stricter standard in considering a child's wishes." <u>Tsai-Yi Yang v. Fu-Chiang Tsui</u>, 499 F.3d 259, 278 (3d Cir. 2007) (quoting <u>de Silva v. Pitts</u>, 481 F.3d 1279, 1286 (10th Cir. 2007)).

Custodio does not appeal the district court's finding that G. had reached a sufficient age and degree of maturity to appropriately take account of his views. The sole issue is whether the district court properly considered G.'s objections.

The parties dispute the proper standard of review to apply to a child's objections under the Hague Convention. We have not yet addressed this question. Custodio argues that de novo review is appropriate because evaluating a child's objections is a mixed question of fact and law. <u>Cf. Silverman v. Silverman</u>, 338 F.3d 886, 896 (8th Cir. 2003) (en banc) (holding determination of a child's "habitual residence" is a mixed question of fact and law reviewed de novo). We find <u>Silverman</u> inapposite here, and are instead persuaded by out-of-circuit authority, all of which has concluded that the question of whether a child objected to return is subject to clear error review. <u>See Vasconcelos v. Batista</u>, 512 F. App'x 403, 407 (5th Cir. 2013) (unpublished); <u>Tsai-Yi Yang</u>, 499 F.3d at 279; <u>Blondin v. Dubois</u>, 238 F.3d 153, 167–68 (2d Cir. 2001); <u>see also de Silva</u>, 481 F.3d at 1287 (according "great deference" to the trial court's findings following its interview of the child). Clear error is appropriate because the district court's finding that a child has or has not objected is a "fact-intensive" determination that is based in part on the court's personal observations of the child. <u>See de Silva</u>, 481 F.3d at 1287; <u>Blondin</u>, 238 F.3d at 167. Such determinations are peculiarly within the province of the trial court and must be given "great deference." <u>United States v. Wright</u>, 512 F.3d 466, 472 (8th Cir.

2008) (trial court's "credibility judgments based on the testimony and presentation of the witnesses" given "great deference"); see United States v. Ralph, 480 F.3d 888, 890 (8th Cir. 2007) (district court had "distinct advantage at evaluating the credibility" of minor child, making such determinations "virtually unreviewable on appeal").

Such deference is appropriate here where the district court observed G. testify twice: first, in chambers outside the presence of the parties and lawyers and later, in open court and subject to cross examination. The district court found that G. wished to remain in St. Louis because he did not want to separate from his mother, step-father, and two brothers. He did not want to return to Peru because he "does not feel safe with his father." In chambers, G. said he was afraid of his father, who was "very aggressive" and had previously struck him and his brother. The district court also observed that G. liked his school in the United States and had many friends, whereas he disliked his Peruvian school and had no real friends there. The court found G. to be a "very thoughtful and intelligent" young man whose testimony represented his "genuine thoughts and feelings."

Custodio argues that the district court improperly considered objections relevant only to a custody determination. That is, he contends that a wrongfully removed child may not object based on a wish to live with a particular parent or on circumstances that are the product of the wrongful retention, as decisions based on these objections would embroil the court in the underlying custody dispute. It is true that "[a] case arising from a petition under the Hague Convention is not a custody proceeding." Barzilay I, 536 F.3d at 847. Under the Hague Convention and ICARA, a district court "has authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim." Id. (quotation omitted); see Hague Convention art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue."); 22 U.S.C. § 9001(b)(4) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody

-7-

claims."). Such general principles, however, do not control application of the mature child defense—a defense that has not previously been considered by this court. The propriety of considering evidence relevant to custody in a proceeding under the Hague Convention depends on the nature of the exception to return and the specific facts of the case. Cf. Nunez-Escudero v. Tice-Menley, 58 F.3d 374, 378, 377 (8th Cir. 1995) (instructing the district court "not to consider evidence relevant to custody or the best interests of the child" in evaluating the "grave risk of harm" defense which requires a determination of "whether the child will face immediate and substantial risk of an intolerable situation if he is returned").

With regard to the mature child defense, the Explanatory Report provides the following guidance:

> [T]he Convention also provides that the child's views concerning the essential question of its return or retention may be conclusive, provided it has, according to the competent authorities, attained an age and degree of maturity sufficient for its views to be taken into account. In this way, the Convention gives children the possibility of interpreting their own interests. Of course, this provision could prove dangerous if it were applied by means of the direct questioning of young people who may admittedly have a clear grasp of the situation but who may also suffer serious psychological harm if they think they are being forced to choose between two parents. However, such a provision is absolutely necessary given the fact that the Convention applies, *ratione personae*, to all children under the age of sixteen; the fact must be acknowledged that it would be very difficult to accept that a child of, for example, fifteen years of age, should be returned against its will.

Pérez-Vera, supra ¶ 30. This commentary makes clear that a mature child's views on return can be "conclusive." As the Fifth Circuit recently explained, the Explanatory

Report "does not suggest the child's interpretation of [his] 'own interests' is invalid if it is based" on custody considerations. Rodriguez, 817 F.3d at 475. Rather, "the drafters of the Convention simply deemed it inappropriate to return a mature child 'against its will'—whatever the reason for the child's objection." Id. at 475–76. We agree with the Fifth Circuit's well-reasoned interpretation of the mature child defense. Requiring the district court to distinguish between a child's custody-based and non-custody-based objections would likely be an impossible task—a task that the Convention does not require. Accordingly, the district court did not err in considering objections that may also be relevant to a custody proceeding.

G.'s testimony included particularized objections to returning to Peru, such as his fear of his father with whom he felt unsafe, his dislike of his Peruvian school, and his lack of friends in Peru. Due to mistreatment by his father and paternal grandmother, G. expressed that he would not visit Custodio even if he was required to return to Peru. Further, G. has specific ties to the United States, including M. and his baby brother, whereas he has virtually no ties to Peru and barely any relationship with Custodio, with whom he has had no contact since arriving in the United States and saw only sporadically prior to leaving Peru. Based on these facts, the district court did not clearly err in finding that G.'s statements constituted an objection within the meaning of the mature child defense.[3]

---

[3]Custodio also argues that the district court should have ignored the children's objections because their desire to remain in the United States is the product of Torres' undue influence. See Rodriguez, 817 F.3d at 476; Tsai–Yi Yang, 499 F.3d at 279. However, his undue influence argument focuses solely on M.'s testimony and thus is moot. Even so, Custodio presents no basis to disturb the district court's conclusion that G.'s testimony represented his "genuine thoughts and feelings and there was no indication that [he] had been coached or otherwise unduly influenced" by Torres.

### III. Abuse of Discretion

Even though Torres met her burden of proving the mature child affirmative defense applies, the district court has the discretion to refuse to apply the defense and "order the return of the child if it would further the aim of the Convention which is to provide for the return of a wrongfully removed child." Tsai-Yi Yang, 499 F.3d at 278 (quoting de Silva, 481 F.3d at 1285); see also Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. at 10,509 ("The courts retain the discretion to order the child returned even if they consider that one or more of the exceptions applies."). The district court's decision whether to apply a defense is reviewed for abuse of discretion. See Garcia v. Pinelo, 808 F.3d 1158, 1167 (7th Cir. 2015) ("[A] district court retains discretion not to apply an exception, and . . . its decision either way is reviewed only for abuse of discretion.").

Custodio argues the district court abused its discretion in refusing to order return. According to Custodio, allowing G. to remain in the United States improperly overrides the Peruvian court's custody orders, which are entitled to deference and comity in this court. Further, Custodio argues that by refusing to order return, the district court undermined the aim of the Convention to "deter abduction by 'depriv[ing] [the abductor's] actions of any practical or juridical consequences.'" Barzilay II, 600 F.3d at 916 (alternations in original) (quoting Pérez-Vera, supra ¶ 16). As Custodio points out, when Torres applied to the Peruvian court for temporary travel authorization, she had no intention of returning the children: She brought all of her belongings to St. Louis and married an American citizen ten days after arrival. Since then, Torres has disobeyed five orders from the Peruvian court compelling her to return the children. Given these facts, it would not have been an abuse of discretion for the district court to return the children, regardless of the mature child defense finding. District courts may decline to apply a defense where doing so would reward a parent for wrongfully removing or retaining the children in violation of a

Contracting State's custody orders. <u>See</u> <u>Garcia</u>, 808 F.3d at 1169; <u>Tsai-Yi Yang</u>, 499 F.3d at 280.

However, while Torres' actions are concerning, they do not compel a finding that the district court abused its discretion in refusing to order return. The district court's decision to respect 15-year-old G.'s opposition to returning to Peru and desire to remain in the United States was not an abuse of discretion. After thorough questioning by the district court and opposing counsel, the court found G. "understood the purpose and significance" of the proceedings and conveyed his "genuine thoughts and feelings" regarding return. The court acted within its discretion in deferring to the objections of an undisputedly mature child. The district court's consideration of a mature child's views may but need not be affected by the wrongful actions of his or her parent.

## Conclusion

This is undoubtedly a close case. But, the district court did not clearly err in considering G.'s objections to returning to Peru. Whether to apply the mature child defense was within the district court's discretion. We see nothing powerful enough in this record to warrant the rejection of its conclusion. We deny as moot the appeal as to M. and affirm the district court's judgment as to G.

_____