# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-1289

———————————————

Vladyslav Dubikovskyy

*Petitioner - Appellant*

v.

Elena Goun

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

——————————

Submitted: January 13, 2022
Filed: December 6, 2022

——————————

Before COLLOTON, KELLY, and KOBES, Circuit Judges.

——————————

KELLY, Circuit Judge.

Elena Goun violated her joint custody agreement with Vladyslav Dubikovskyy by traveling from Switzerland to the United States with their then-12-year-old daughter, M.D., in July 2020. Dubikovskyy filed a petition seeking M.D.'s return to Switzerland, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the Hague Convention), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89. After an evidentiary hearing on the merits, the district court denied the petition based on the mature child defense, finding that M.D.

was of sufficient age and maturity such that the court should take account of her views and that she objected to returning to Switzerland. Dubikovskyy appeals.

I.

A.

Dubikovskyy, a citizen of Ukraine, and Goun, a citizen of Russia, married in December 2007 while living in California. They have one child together, M.D., who was born in June 2008 in California and is a United States citizen. In 2011, the family moved to Lausanne, Switzerland, where Goun had taken a job as a chemistry professor at a university, and became permanent Swiss residents.

Goun and Dubikovskyy separated in 2015, and Goun filed for divorce in December 2017, after the mandatory two-year waiting period under Swiss law. Goun was temporarily awarded full custody of M.D. during the pendency of divorce proceedings, but the ultimate conciliation agreement, reached in April 2018, provided for shared custody of M.D., including alternating custody on a weekly basis and split vacations and holidays.

After their separation, Goun and Dubikovskyy disagreed about various aspects of M.D.'s custody and care, such as whether M.D. could go to Goun's house during the school lunch hour when staying with Dubikovskyy and M.D.'s childcare arrangement while Dubikovskyy was at work. At one point during the divorce proceedings, Goun sought psychiatric treatment for M.D., but under Swiss law both parents must consent to such treatment, and Dubikovskyy would not consent. In March 2019, Goun sought to modify the custody arrangement to obtain sole custody of M.D., and she asked a Swiss court to order a psychiatric evaluation for M.D. Dubikovskyy again objected, and the Swiss court found insufficient evidence to order an examination over his objection. After interviewing M.D., the Swiss court also denied modification of the custody arrangement, and Goun and Dubikovskyy continued to have joint custody of M.D.

B.

During M.D.'s school summer break in 2020, Goun and Dubikovskyy agreed that M.D. would spend July 3 to 24 with Dubikovskyy and July 24 to August 21 with Goun. They also agreed that, in light of the COVID-19 pandemic, neither would take M.D. on any trips requiring air travel, and they specifically agreed not to take M.D. to North America, where pandemic conditions were much worse than in Switzerland.

Yet, on July 25, 2020, Goun traveled with M.D. to the United States. Unbeknownst to Dubikovskyy and M.D., Goun had accepted a permanent faculty position at the University of Missouri and had purchased a home in Columbia, Missouri. Goun did not tell M.D. about the trip until the day they left Switzerland, but Goun had purchased round-trip tickets in case M.D. did not want to stay in the United States.

On July 28, 2020, Dubikovskyy learned Goun and M.D. had traveled to the United States. Two days later, he petitioned a Swiss court to order their return to Switzerland, and on August 4, the court ordered Goun to return M.D. to Switzerland in time for her to start the school year. On August 13, 2020, Goun petitioned a Swiss court to transfer M.D.'s residence to the United States on the grounds that M.D. had decided she wanted to stay in Missouri. The Swiss court denied the petition and characterized Goun's actions as an illegal abduction. The court found that Goun violated the custody arrangement and granted Dubikovskyy the sole right to determine M.D.'s residence. The ruling was upheld on appeal on September 11, 2020. Dubikovskyy also initiated criminal proceedings against Goun in Switzerland, and there is a warrant for Goun's arrest if she returns to Switzerland or any other country in the Schengen Area.[1]

---

[1]Dubikovskyy represented to the district court that if the court granted his petition and M.D. returned to Switzerland, he would drop the criminal charges against Goun so that she could visit M.D.

Despite the Swiss court's ruling, Goun and M.D. remained in Columbia, Missouri, with M.D.'s half-sister and Goun's partner, and M.D. started attending middle school in Missouri when the 2020–21 school year began.

C.

On October 23, 2020, Dubikovskyy filed a petition with the United States District Court for the Western District of Missouri seeking return of M.D. to Switzerland pursuant to the Hague Convention, implemented through the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001–11. Dubikovskyy alleged that M.D.'s country of habitual residence is Switzerland and that Goun's actions constitute an unlawful retention. He asked that the court order M.D. be returned to Switzerland. In response, Goun asserted two affirmative defenses—that there is a grave risk that M.D. would be exposed to physical or psychological harm or otherwise be in an intolerable situation if she returned to Switzerland (the grave risk of harm defense), and that M.D. objects to being returned and has attained an age and degree of maturity such that the court should take account of her views (the mature child defense).

On December 2, 2020, the district court held an evidentiary hearing on the merits of the petition and heard testimony from Dubikovskyy; one of Dubikovskyy's friends who spent time with Dubikovskyy and M.D. in Switzerland; Goun; and Goun's Swiss custody lawyer. Goun also called M.D. as a witness,[2] and the court interviewed M.D. with only her parents' attorneys present.

---

[2]Dubikovskyy had filed a motion in limine to exclude or limit M.D.'s testimony the day before the bench trial. The district court did not rule on the motion prior to the hearing but afterward denied the motion as moot.

Two days after the evidentiary hearing, the district court, pursuant to Federal Rule of Evidence 706,[3] appointed psychologist Dr. James Straub to "provide information about the maturity and independence of [M.D.]" because the court was concerned that M.D. may have been unduly influenced by her mother when she was removed from Switzerland. Dubikovskyy objected to Dr. Straub's appointment. Notwithstanding that objection, Dr. Straub examined M.D. and submitted a written report to the court on December 14, 2020. Dr. Straub concluded that M.D.'s responses to his questions were based on her own thoughts and not from coaching. He opined, "[M.D.] expressed well thought out responses about her future and choices about where to live with a maturity beyond what is typical for her age," and "[M.D.] shows the intelligence and maturity to process and understand information about her situation and make decisions about where to live." After receiving the report, the district court again interviewed M.D. in camera, this time outside the presence of counsel.

On January 7, 2021, the district court denied Dubikovskyy's petition, relying on the mature child defense. The district court found that M.D. was "sufficiently mature and independent [such that the court could] account for her views" and that M.D. had "stated an objection to returning to Switzerland," with reasons similar to those "an adult might consider when deciding where to live, i.e.[,] family responsibilities, comfort, and opportunities to pursue goals that are meaningful and inspiring to them." The district court noted M.D. "was reluctant to use the word objection because she did not want to make her father sad," but nonetheless concluded that "there is no doubt based on her words and expressions that she does not want to return to Switzerland." The court further explained it was "confident

---

[3]Under Rule 706, the court may appoint an expert witness of its own choosing or upon nomination by the parties. Fed. R. Evid. 706(a).

M.D.'s decision [was] made independently of either parent's influence." On February 5, 2021, Dubikovskyy appealed.[4]

## II.

The Hague Convention "entitles a person whose child has wrongfully been removed to or retained in the United States to secure the prompt return of the child to the child's country of habitual residence, unless the respondent can establish that an affirmative defense applies." Custodio v. Samillan, 842 F.3d 1084, 1087 (8th Cir. 2016) (citing Rydder v. Rydder, 49 F.3d 369, 372 (8th Cir. 1995)); see also 22 U.S.C. § 9001(a). The primary purpose of the Hague Convention is "to restore the *status quo ante* and to deter parents from crossing international boundaries in search of a more sympathetic court." Rydder, 49 F.3d at 372. "It is the Convention's core premise that the interests of children in matters relating to their custody are best served when custody decisions are made in the child's country of habitual residence." Monasky v. Taglieri, 140 S. Ct. 719, 723 (2020) (cleaned up).

To establish a prima facie case for a child's return, a petitioner must establish by a preponderance of the evidence that "(1) immediately prior to removal or retention, the child habitually resided in another Contracting State; (2) the removal or retention was in breach of the petitioner's custody rights under that State's law; and (3) the petitioner was exercising those custody rights at the time of the removal or wrongful retention." Custodio, 842 F.3d at 1088. If a petitioner establishes this prima facie case, the child must be "promptly returned unless one of the narrow exceptions set forth in the Convention applies." Id. at 1089 (quoting 22 U.S.C. § 9001(a)(4)). Here, there is no dispute that Dubikovskyy has established a prima facie case; the sole issue on appeal is whether the district court erred by applying one of the narrow exceptions—the mature child defense—to deny his petition.

---

[4]Proceedings continued in district court on attorney's fees and costs. The district court issued an order on February 7, 2021, finding that costs for the court-appointed psychologist would be assessed to Goun and each party would bear its own attorney's fees.

The mature child defense comes from Article 13 of the Hague Convention, which provides that a judicial or administrative authority may "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention art. 13; see also Elisa Pérez-Vera, Explanatory Report: Hague Convention on Private International Law ¶ 30 (1981), https://assets.hcch.net/upload/expl28.pdf ("[T]he Convention also provides that the child's views concerning the essential question of its return or retention may be conclusive . . . . [T]he Convention gives children the possibility of interpreting their own interests."). The drafters of the Hague Convention "deemed it inappropriate to return a mature child 'against its will.'" Rodriguez v. Yanez, 817 F.3d 466, 476 (5th Cir. 2016) (quoting see Pérez-Vera, supra ¶ 30).

For the mature child defense to apply, the respondent must establish by a preponderance of the evidence that (1) the child has attained an age and degree of maturity at which it is appropriate to take account of her views, and (2) the child objects to being returned. Custodio, 842 F.3d at 1089 (citing Hague Convention art. 13); see also 22 U.S.C. § 9003(e)(2)(B). If a child is found to be mature, the reasons the child objects to being returned are immaterial. See Custodio, 842 F.3d at 1091 (adopting the rule from Rodriguez, 817 F.3d at 475–76, that the mature child defense may apply "whatever the reason for the child's objection"). We construe the mature child defense narrowly. Id., 842 F.3d at 1089. A stricter standard also applies when a child's views are the sole reason for denying repatriation. See Tsai-Yi Yang v. Fu-Chiang Tsui, 499 F.3d 259, 278 (3d Cir. 2007).

On appeal, Dubikovskyy does not contest the district court's finding that M.D. had attained an age and degree of maturity at which it is appropriate to take account of her views. Rather, Dubikovskyy argues that the district court erred at the second step by accepting M.D.'s preference for staying in Missouri, rather than requiring an objection to returning to Switzerland. Indeed, "[a] preference is not an objection," and there is a "substantive difference between preferring to live in one of two countries . . . and affirmatively objecting to returning to one country." Rodriguez,

817 F.3d at 476–77.  Under the Hague Convention, a child's preference or "generalized desire" to remain in the United States is insufficient to invoke the narrow mature child exception.  See Tsai-Yi Yang, 499 F.3d at 279.  Instead, the child's testimony must include "particularized objections" to returning to the former country of residence.  Id.  The district court recognized the important distinction between a preference and an objection, citing a dictionary definition for objection, "a reason, ground, or cause for expressing opposition," and noting that an objection "connotes more than a preference for the alternative."

M.D. testified that she "would love to live [in Missouri] because [she has a] lot of things here, and it would be really great for [her] dad to come [to Missouri] for vacation."  When asked about returning to Switzerland, however, she said that she thought she would be "okay," and that she was not afraid to go back there.  But she added that she would be "unhappy" if she had to move to Switzerland, and she gave several reasons:  she would not be able to attend the same school as her close friend who lived in a different Swiss town; she could not bring her dog with her; she would miss her mother, her half-sister, and her friends in Missouri; and it was more difficult to ride horses in Switzerland.

In an effort to determine whether M.D. truly "objected" to returning to Switzerland, the district court asked her if she knew the meaning of the words "objection" and "preference."  M.D., speaking in a second language,[5] said she did not understand "object."  The court tried to explain the difference between the two words by offering M.D. some examples:  "I object to cleaning the bathroom."  "I object to my little sister yelling in my ears."  "Do you object to getting up early in the morning to go to school?"  The court continued by saying that "[a]n objection is something you don't want.  You're displeased.  One is stronger than the other."  When the court then asked M.D. whether she "objected" to returning to Switzerland or whether she simply "preferred" one location over the other, M.D. was equivocal.

---

[5]M.D. testified in English, which was not her first language.  The record indicates she also spoke French, Russian, and "a little bit of" German.

Her most complete answer was: "I would say it's, like, middle, but, yeah. Maybe I object — I don't know. . . . I mean, I — I'm kind of in the middle, but I think I — I'm more on the object — object side. I don't know. Objection. Yeah." The court asked M.D. why she hesitated in her answer, and M.D. responded, "I don't know. It's, like, hard . . . ."

We recognize the challenges that come with deciphering the difference between an objection and a preference in a child's testimony. If given two choices, country A and country B, an objection to living in A will almost always (although not invariably) indicate a preference for living in B. But a preference to live in B does not necessarily indicate an objection to living in A. In this case, M.D.'s testimony fails to show by a preponderance of the evidence that she "objected" to returning to Switzerland. Rather, when asked why she would be "unhappy," or "dissatisfied" if she had to go back to Switzerland, M.D. consistently responded with reasons why she preferred to stay in Missouri.[6] As to the district court's discussion of M.D.'s above-average intelligence, strong personality, and well-developed sense of responsibility for her younger sibling and the feelings of others, such findings are relevant to whether the child has reached the age and maturity at which it is appropriate to consider her views on repatriation. But these observations do not speak to whether M.D. has in fact lodged an objection to being returned to Switzerland. Here, M.D.'s desire to remain in the United States was not coupled with a particularized objection to returning to Switzerland. As a result, it is insufficient to meet the strict standard that applies when the mature child defense is the sole grounds for denying an abducted child's return. See Tsai-Yi Yang, 499 F.3d at 278.

We agree with the district court that M.D. is an "innocent party" in this acrimonious dispute. But because M.D. did not express a particularized objection to returning to Switzerland, instead describing a preference—for a variety of

---

[6]To the extent M.D. equated her feelings about returning to Switzerland to an objection to household chores or getting up early, we conclude that the analogy is insufficient on this record to establish the mature child defense.

understandable reasons—to remain in the United States, the district court's finding that M.D.'s statements constituted an objection within the meaning of the mature child defense was clearly erroneous. <u>Custodio</u>, 842 F.3d at 1089 (whether a mature child has objected to the return to her country of habitual residence is reviewed for clear error).

III.

For the above-stated reasons, we reverse the judgment of the district court and remand the case with directions to grant the petition for the return of M.D. under the Hague Convention on the Civil Aspects of International Child Abduction.

_____